IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Mary M. Burris, ) | |
| ) | Civil Action No. 6:04-2192-DCN-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)((B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits (DIB).

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for DIB on May 4, 2001, alleging a disability onset date of July 13, 2000, due to diabetes, pain in the feet, legs, and back, and arthritis (Tr. 37-39). Her application was denied initially and upon reconsideration (Tr. 23-34). The plaintiff then requested a hearing before an administrative law judge (ALJ) which was held

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

June 13, 2003 (Tr. 190-237).  The ALJ issued a decision on September 23, 2003, denying her claim and making the following findings (verbatim):

> (1) The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3) The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR 404.1520(b).
>
> (4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5) The undersigned finds the claimant's allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision.
>
> (6) The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
>
> (7) The claimant has the following residual functional capacity: sedentary work.
>
> (8) The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).
>
> (9) The claimant is a "younger individual" (20 CFR §§404.1563).
>
> (10) The claimant has a "high school (or high school equivalent) education" (20 C.F.R. § 404.1564).
>
> (11) The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).
>
> (12) The claimant has the residual functional capacity to perform the full range of sedentary work (20 CFR § 404.1567).

>    (13)    Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.21.
>
>    (14)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f)).

(Tr. 16-17).

On June 4, 2004, the Appeals Council denied the plaintiff's request for review, thus making the ALJ's decision the Commissioner's "final decision" for purposes of judicial review (Tr. 4-6). *See* 42 U.S.C. §405(g); 20 C.F.R. §404.981.

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **EVIDENCE PRESENTED**

The plaintiff was born on December 25, 1953; she was 46 years old at the alleged onset date of disability and 50 years old on the date of the Commissioner's "final decision" (Tr. 51). She is a high-school graduate who has past relevant work experience as a cashier (Tr. 62, 65).

### *Medical Evidence*

On December 29, 1997, the plaintiff presented to Dr. Mary Mitchell for complaints of bronchial asthma. Treatment notes indicate that the plaintiff's blood pressure was stable and that she smoked four packs of cigarettes per day. The plaintiff was prescribed medication and was encouraged to stop smoking (Tr. 166).

On August 11, 1998, Dr. Mitchell diagnosed the plaintiff with diabetes. The plaintiff was prescribed medication and provided with information regarding diet and proper

3

foot care. She was also encouraged to be compliant with her diet and medications (Tr. 169). At a follow-up examination on August 19, 1998, the plaintiff's blood pressure was 112/86 and her fasting blood sugar was 215. The plaintiff was again instructed to comply with her diet and medications (Tr. 170).

The plaintiff had a follow-up appointment with Dr. Mitchell on November 29, 1999. Examination revealed the plaintiff had full range of motion of her extremities and that her fasting blood sugar was 211. Dr. Mitchell assessed uncontrolled diabetes and counseled the plaintiff regarding her diet (Tr. 152).

On December 21, 1999, the plaintiff was referred to Dr. Mary Morrow for evaluation of proteinuria. Examination revealed trace bilateral lower extremity edema. Dr. Morrow assessed proteinuria with stable renal function and uncontrolled diabetes. The plaintiff was prescribed medication to lower her level of proteinuria and blood pressure. A renal ultrasound was normal (Tr. 110-113, 189).

The plaintiff presented to Dr. Mitchell on July 11, 2000, with complaints of a "sore back." She was prescribed Motrin as needed for her back pain (Tr. 148).

Dr. Mitchell's treatment notes from January 3, 2001, indicate that the plaintiff had no edema of the extremities and that she was noncompliant with her diet and medications (Tr. 146).

The plaintiff had a follow-up appointment with Dr. Mitchell on March 26, 2001. She noted that the plaintiff had full range of motion of her extremities and recommended continuation of the plaintiff's medications (Tr. 175).

On an annual physical examination form dated July 9, 2001, it was noted that the plaintiff was able to dress herself, shop, drive, cook, clean house and exercise (Tr. 145).

On July 12, 2001, the plaintiff underwent a consultative medical evaluation with Dr. John Kirkland. The plaintiff complained of problems with her feet, ankles, and legs and indicated that they became numb after standing two to three hours. The plaintiff

reported that her hypertension was controlled with medication. Examination revealed that the plaintiff's blood pressure was 124/83 and that her vision was normal. The examination further revealed that the plaintiff had no areas of tenderness, no muscle spasm, no pain, no joint swelling or deformity, and no limitations of motion. Her extremities were normal with no edema, deformities, or muscle wasting, and she had good strength in her arms and legs. Dr. Kirkland noted that he did not detect any diabetic complications. X-rays demonstrated osteoarthritis of the left knee (Tr. 114-16).

On August 8, 2001, Dr. Robert Kukla, a State agency medical consultant, determined the plaintiff's diabetes, blood pressure, and complaints of feet swelling were non-severe impairments. He also determined that the plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for about six hours in an eight-hour day, and sit about six hours in an eight-hour day (Tr. 118-20).

The plaintiff presented to Dr. Mitchell on September 13, 2001, with complaints of pain in the arch of her left foot. The plaintiff was advised to take over-the-counter aspirin (Tr. 176).

Treatment notes dated May 3, 2002, indicated that the plaintiff had no edema of the extremities and that she was assessed with peripheral neuropathy (Tr. 178). Treatment notes from August 22, 2002, indicated that the plaintiff had full range of motion of her extremities (Tr. 180).

On February 4, 2003, x-rays demonstrated mild diffuse osteoarthritis of the right knee (Tr. 182). Treatment notes from April 11, 2003, indicated the plaintiff had full range of motion of her extremities and no back complaints (Tr. 185).

*Hearing Testimony*

At her hearing before the ALJ on June 13, 2002, the plaintiff testified that problems with her feet, legs, and back prevented her from working (Tr. 210). She also

testified that over-the-counter medication eased her knee pain and that her blood pressure was usually controlled (Tr. 220, 229). The plaintiff testified that her feet swelled and that she had to elevate them waist-high every day (Tr. 213-14). She testified that she had arthritis in her fingers and that she did not have much strength in her hands (Tr. 215, 222). She also testified that she could lift 10-15 pounds, stand for 15-20 minutes, and sit for 30 minutes (Tr. 214, 218, 223). The plaintiff testified that she had a driver's license and was able to wash clothes, watch television, mop the floor, and read (Tr. 199, 230-31, 234).

### *Administrative Decision*

The ALJ followed the five-step sequential evaluation process to determine that the plaintiff was not disabled. At the first step, he found the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 16, Finding 2). At the second step, the ALJ found that the plaintiff suffered from an impairment or a combination of impairments considered "severe" (Tr. 16, Finding 3). At the third step of the sequential evaluation, however, the ALJ found that the plaintiff's impairments did not meet or medically equal a listed impairment (Tr. 16, Finding 4).

At the fourth step, the ALJ assessed the plaintiff's residual functional capacity (RFC) during the insured period and determined that she retains the RFC to perform the full range of "sedentary work" (Tr. 17, Finding 7, 12). In reaching this conclusion, the ALJ considered the relevant medical evidence, all medical opinions, and the hearing testimony regarding the plaintiff's symptoms and limitations, including the plaintiff's subjective complaints. Based upon this RFC, the ALJ found that the plaintiff's impairments precluded her from performing her past relevant work activity (Tr. 17, Finding 8). At the fifth step of the sequential evaluation, using the Medical-Vocational Rules, the ALJ found that the plaintiff was "not disabled" (Tr. 17, Finding 13). Therefore, the ALJ found that the plaintiff was not under a "disability" as defined by the Social Security Act (Tr. 17, Finding 14).

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82-62.  The plaintiff bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence.

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **ANALYSIS**

The plaintiff contends that the ALJ erred in (1) failing to find her disabled based upon a combination of impairments; (2) improperly assessing her residual functional capacity; (3) improperly evaluating her credibility; (4) improperly applying the "grid" rules; and (5) not requiring testimony by a vocational expert.

### *Combination of Impairments*

The plaintiff contends that the ALJ erred in not determining that she is disabled based upon a combination of impairments. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* The cumulative or synergistic effect that the various impairments have on the claimant's ability to work must be analyzed. *DeLoache v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

The ALJ here clearly considered all of the plaintiff's impairments. There is substantial evidence in the record that the plaintiff's diabetes, swelling in her feet, sore back and arthritis in her hands were not severe. In fact, the ALJ found, and the record supports that the plaintiff's "diabetes does not affect her ability to perform basic work activities, and is therefore considered non-severe" (Tr. 14). The record also establishes that a physical examination on one occasion revealed trace bilateral lower extremity edema (Tr. 112), but on other occasions no edema was found (Tr. 115, 146, and 178). Moreover, examinations revealed no areas of tenderness, no muscle spasm, no pain, no joint swelling or deformity, full range of motion, and good strength in the plaintiff's arms and legs (Tr. 115, 146, 152,

9

175, 180, 185). Similarly, with the exception of one complaint of a "sore back" on July 11, 2000, which was treated conservatively with Motrin, there is no further medical evidence regarding the plaintiff's back complaints (Tr. 148, 185). It is worth noting that the plaintiff's physicians did not place any significant restrictions on her daily activities, nor did they ever opine that she was totally and permanently disabled.

In determining the plaintiff's RFC, the ALJ considered the plaintiff's condition as a whole, including her diabetes, alleged swelling in her lower extremities, alleged back pain and arthritis in her hands, and her subjective complaints (Tr. 14-15). The ALJ considered all of the plaintiff's impairments in finding that she could perform sedentary work. The plaintiff's argument is without merit.

### *Residual Functional Capacity*

Social Security regulations require the ALJ to "do a residual functioning capacity assessment." 20 C.F.R. §416.920a(c)(3). The responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ can determine the value to give a medical source's opinions according to the factors listed in 20 C.F.R. §404.1527(d). Further, the determination of a claimant's residual functioning capacity lies with the ALJ, not a physician, and is based upon all relevant evidence. 20 C.F.R. §§404.1545(a), 404.1546, 416.945(z), 416.946.

After reviewing the medical and non-medical evidence, the ALJ concluded that the plaintiff was not disabled and had the RFC to perform the full range of sedentary work[2] (Tr. 15, 17). In so finding, the ALJ specifically considered and was unpersuaded by the

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§404.1567(a), 416.967(a) (2003).

opinions of the State Agency physicians who assessed the plaintiff with the RFC for light work; she discounted their opinions because they did not examine the plaintiff or have the opportunity to consider the record in its entirety (Tr. 15). The ALJ properly considered the plaintiff's medical records and her subjective complaints. There is substantial evidence in the record to support her determination regarding the plaintiff's residual functional capacity. The plaintiff's complaint is without merit.

### *Plaintiff's Credibility*

The plaintiff also contends the ALJ erred by improperly evaluating her subjective testimony regarding the disabling effects of her pain.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence she relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

Here, the ALJ discussed the plaintiff's allegations of disabling pain and limited functional capacity. She found that the plaintiff's allegations were inconsistent with the medical evidence of record, her reports to her physicians, and the treatment sought and received (Tr. 14-15). Thus, she concluded that the plaintiff's allegations were not credible. The ALJ's credibility determination is supported by substantial evidence.

### *Reliance on Grids*

The ALJ relied on the Medical-Vocational Guidelines (the "grids") to satisfy the Commissioner's burden to identify jobs in the national economy that the plaintiff can perform. *Heckler v. Campbell*, 461 U.S. 458 (1983); *Walker v. Bowen*, 889 F.2d 47 (4th Cir.

1989). When a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may serve as guidelines. *Wilson v. Heckler*, 743 F.2d 218, 222 (4th Cir. 1984). The Fourth Circuit has recognized that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Walker*, 889 F.2d at 49. The proper inquiry in such a case is "whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id.* If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the grids. The question of whether a nonexertional condition interferes with a claimant's residual functional capacity to perform certain jobs is a question of fact. *Smith v. Schweiker*, 719 F.2d 723 (4th Cir. 1984).

Here, the plaintiff contends that she had "severe" nonexertional impairments – pain and swelling in her lower extremities – that would preclude the use of the grids. However, despite the plaintiff's allegations of severe pain and swelling of her feet, the medical evidence of record is unsupportive. The only pain medication that the plaintiff was taking was over-the-counter medication (Tr. 220), and there is only one mention of trace bilateral lower extremity swelling in December 1999, approximately six months prior to the plaintiff's alleged onset of disability (Tr. 112). After the alleged onset date, the medical evidence of record indicates no joint swelling or edema of the lower extremities (Tr. 115, 146, 178). Accordingly, record evidence establishes that the plaintiff's alleged pain and lower extremity swelling did not affect either the exertional requirements of sedentary work or the nonexertional aspects of her ability to do work-related activities consistent with sedentary work, and did not significantly erode the job base for sedentary work.

The ALJ reasonably concluded that the plaintiff's limitations were completely exertional in nature. Because the ALJ found, as a matter of fact, that the plaintiff was able to engage in the full range of sedentary work, she found Rule 201.21, 20 C.F.R. Part 404,

Subpart P, Appendix 2, Table 1, dispositive of the claim.  This court agrees that there is substantial evidence to support the finding that the plaintiff's nonexertional maladies did not significantly affect her ability to perform work of which she was exertionally capable.

### *Vocational Expert Testimony*

The plaintiff also contends that, based on her testimony that she is unable to stand, sit or walk for prolonged periods of time, it is reasonable to expect that even sedentary jobs would be required to consider a sit-stand option and that vocational expert testimony is needed to establish the effect of such an option on the occupational base. According to the record evidence, however, no physician has placed any limitations on the plaintiff's ability to sit, stand or walk.  Accordingly, the ALJ's finding that the plaintiff can perform the full range of sedentary work is supported by substantial evidence, and the plaintiff's complaint is without merit.

### **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed.

s/William M. Catoe<br>
United States Magistrate Judge

May 16, 2005

Greenville, South Carolina